# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **ROY D. RATLIFF,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 1:07cv00058 |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: Pamela Meade Sargent |
| Defendant. | ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand this case to the Commissioner for further consideration consistent with this Memorandum Opinion.

*I. Background and Standard of Review*

The plaintiff, Roy D. Ratliff, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying Ratliff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517
-1-

(4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Ratliff protectively filed his application for disability on July 22, 2005, alleging disability as of February 3, 2005,[1] due to back problems and depression. (Record, ("R."), at 46-50, 65, 68, 92, 110.) The claim was denied initially and upon reconsideration. (R. at 30-32, 35, 39-41.) Ratliff then requested a hearing before an administrative law judge, ("ALJ"). (R. at 42.) The ALJ held a hearing on June 21, 2006, at which Ratliff was represented by counsel. (R. at 343-74.)

By decision dated November 8, 2006, the ALJ denied Ratliff's claim. (R. at 14-22.) The ALJ found that Ratliff met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2008. (R. at 16.) The ALJ found that Ratliff had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 16.) The ALJ also found that the medical evidence established that Ratliff suffered from severe impairments, namely discogenic/degenerative back disorder and a muscle disorder, but that he did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart

---

[1]At the administrative hearing, Ratliff amended his application to indicate his date of disability was February 3, 2005, rather than December 13, 2004. (R. at 46, 365.)

-2-

P, Appendix 1. (R. at 16-19.) The ALJ found that Ratliff had the residual functional capacity to perform a limited range of light work[2] that would not require more than occasional pushing or pulling with the upper extremities, that allowed limited reaching and that did not expose him to temperature extremes, wetness, humidity, noise, vibration, respiratory irritants and hazards. (R. at 19-20.) The ALJ also found that Ratliff was limited to performing low-stress, simple tasks in a work environment that did not require extensive interaction with supervisors, co-workers or the public. (R. at 20.) Thus, the ALJ found that Ratliff was able to perform his past relevant work as a bench assembler and a press operator. (R. at 21.) Based on Ratliff's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that, in addition to Ratliff's past work as a bench assembler and a press operator, jobs existed in significant numbers in the national economy that Ratliff could perform, including those of a security monitor and a gate guard. (R. at 22.) Therefore, the ALJ found that Ratliff was not disabled under the Act and was not eligible for DIB benefits at any time through the date of his decision. (R. at 22.) *See* 20 C.F.R. § 404.1520(f ),(g) (2007).

After the ALJ issued his decision, Ratliff pursued his administrative appeals, (R. at 9), but the Appeals Council denied his request for review. (R. at 4-6.) Ratliff then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2007). This case is before the court on Ratliff's motion for summary judgment filed December 21, 2007, and the Commissioner's motion for summary judgment filed February 21, 2008.

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2007).

## II. Facts[3]

Ratliff was born in 1964, which classifies him as a "younger person" under 20 C.F.R. § 404.1563(c). (R. at 46, 346.) He has a high school education and past relevant work experience as a welder and a mechanic. (R. at 69, 73, 347-38.)

Bonnie Martindale, a vocational expert, also was present and testified at Ratliff's hearing. (R. at 362-73.) Martindale was asked to consider a hypothetical individual of Ratliff's age, education and work experience, who could perform simple, low-stress sedentary work that did not require dealing with the public. (R. at 366-67.) Martindale stated that a significant number of surveillance monitor jobs existed that such an individual could perform. (R. at 368.) Martindale stated that a significant number of light gate guard jobs existed that such an individual could perform. (R. at 368-69.)

In rendering his decision, the ALJ reviewed medical records from Heartland Rehabilitation Services; Dr. Neal A. Jewell, M.D.; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. Randall Hays, M.D., a state agency physician; Rebekah C. Ramey, M.A., a senior licensed psychological examiner; R. Eric Roth, Psy.D., a licensed psychologist/neuropsychologist; Stone Mountain Health Services; Wellmont Bristol Regional Medical Center; Dr. Dia Owens, M.D.; Crystal Burke, L.C.S.W., a licensed clinical social worker; and Appalachian Rehabilitation and Sports Medicine.

---

[3]While the record shows that Ratliff has both physical and mental impairments, the contentions of Ratliff's arguments concern solely his mental impairments. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-14.) Thus, I will address only those facts pertaining to Ratliff's mental impairment.

-4-

In December 2005, Ratliff saw Crystal Burke, L.C.S.W., a licensed clinical social worker, reporting that his "world ha[d] been turned upside down" since a work injury the year before. (R. at 249.) He reported that his primary care physician had given him samples of Cymbalta, which was somewhat helpful for his symptoms of anxiety and depression.[4] (R. at 249.) Ratliff reported that not being able to work had made him depressed. (R. at 249.) A mental status examination showed that Ratliff was alert, oriented and appropriately groomed. (R. at 249.) He had intact memory. (R. at 249.) His mood was depressed and anxious. (R. at 249.) Ratliff exhibited no obvious psychotic symptoms. (R. at 249.) Burke assessed a mood disorder with characteristic depression and situational stressors. (R. at 249.) In March 2006, Ratliff reported that Cymbalta was helping with his symptoms of anxiety and depression. (R. at 248.) He complained of feelings of worthlessness, social withdrawal and anxiety. (R. at 248.) Burke reported that he appeared anxious and depressed. (R. at 248.) Ratliff reported that he continued to have situational family stressors. (R. at 248.) Burke diagnosed comorbid depression and anxiety associated with `chronic pain. (R. at 248.)

On May 4, 2006, Burke completed a mental assessment indicating that Ratliff had a limited, but satisfactory, ability to follow work rules, to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 245-47.) She indicated that Ratliff had a seriously limited ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work

---

[4]The record shows that Ratliff received treatment from Dr. Dia Owens, M.D., for complaints of depression. He reported in November 2005 that he was depressed since he had been out of work. (R. at 241.) In January 2006, Ratliff reported that Cymbalta was helpful with his pain and depression. (R. at 239.) In March 2006, Ratliff reported that he was nervous about his work situation. (R. at 236.)

-5-

stresses, to function independently, to maintain attention/concentration, to understand, remember and carry out detailed instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 245-47.) Burke also indicated that Ratliff had no useful ability to understand, remember and carry out complex instructions. (R. at 246.)

On May 26, 2006, Rebekah C. Ramey, M.A., a senior licensed psychological examiner, and R. Eric Roth, Psy.D., a licensed psychologist/neuropsychologist, evaluated Ratliff at the request of Ratliff's attorney. (R. at 226-30.) Ratliff reported that he experienced suicidal ideation with a plan of shooting himself. (R. at 226.) Ramey and Roth reported that Ratliff's affect was mildly to moderately blunted. (R. at 228.) Ratliff's speech was described as circumstantial, excessive and pressured. (R. at 228.) Ramey and Roth reported that Ratliff did not appear anxious. (R. at 228.) Ramey and Roth diagnosed major depression, single episode, severe, and rule out major depression, single episode, severe with psychotic features. (R. at 229.) Ramey and Roth indicated that Ratliff had a then-current Global Assessment of Functioning, ("GAF"), score of 55 to 60.[5] (R. at 229.)

Ramey and Roth completed a mental assessment on June 12, 2006, indicating that Ratliff had a limited, but satisfactory, ability to follow work rules, to function independently, to maintain attention and concentration, to understand, remember and

---

[5]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

carry out detailed and simple job instructions, to maintain personal appearance and to demonstrate reliability. (R. at 223-25.) They indicated that Ratliff was seriously limited in his ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to understand, remember and carry out complex instruction, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 223-24.) They also indicated that Ratliff had no useful ability to deal with work stresses. (R. at 223.)

### *III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2007); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2007).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age,

education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated November 8, 2006, the ALJ denied Ratliff's claim. (R. at 14-22.) The ALJ found that the medical evidence established that Ratliff suffered from severe impairments, namely discogenic/degenerative back disorder and a muscle disorder, but that he did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-19.) The ALJ found that Ratliff had the residual functional capacity to perform a limited range of light work that would not require more than occasional pushing or pulling with the upper extremities, that allowed limited reaching and that did not expose him to temperature extremes, wetness, humidity, noise, vibration, respiratory irritants and hazards. (R. at 19-20.) The ALJ also found that Ratliff was limited to performing low-stress, simple tasks in a work environment that did not require extensive interaction with supervisors, co-workers or the public. (R. at 20.) The ALJ found that Ratliff was able to perform his past relevant work as a bench assembler and a press operator. (R. at 21.) Based on Ratliff's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that, in addition to Ratliff's past work as a bench assembler and a press operator, jobs existed in significant numbers in the national economy that Ratliff could perform, including those of a security monitor and a gate guard. (R. at 22.) Therefore, the ALJ found that Ratliff was not disabled under the Act and was not eligible for DIB benefits at any time through the date of his decision. (R. at 22.) *See* 20 C.F.R. §

-8-

Case 1:07-cv-00058-PMS   Document 18   Filed 04/08/08   Page 8 of 12   Pageid#: 487

404.1520(f),(g) (2007).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Ratliff argues that the ALJ failed to comply with 20 C.F.R. § 404.1520a. (Plaintiff's Brief at 4-8.) Ratliff also argues the ALJ erred by failing to find that he suffered from a severe mental impairment. (Plaintiff's Brief at 5, 8-14.) Ratliff does

-9-

Case 1:07-cv-00058-PMS Document 18 Filed 04/08/08 Page 9 of 12 Pageid#: 488

not challenge the ALJ's finding as to his physical impairments or his physical residual functional capacity.

The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a) (2007). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b) (2007). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

The ALJ found that Ratliff's medically determinable mental impairments were nonsevere because they did not last for a continuous period of at least 12 months. (R. at 16-21.) However, the ALJ found that Ratliff was limited to performing low-stress, simple tasks that did not require extensive interaction with supervisors, co-workers or the public. (R. at 20.) Based on my review of the record, I do not find that substantial evidence exists to support this finding nor the ALJ's finding that Ratliff did not suffer from a severe mental impairment. The record contains two mental assessments, one from May 2006, and another from June 2006. (R. at 223-25, 245-47.) The ALJ noted

that he was rejecting Burke's opinion that Ratliff would miss more than two days of work per month because it was not consistent with her evaluation or her counseling notes. (R. at 21.) The ALJ also noted that he was rejecting Ramey and Roth's assessment because it was internally inconsistent and not supported by progress notes from Ratliff's treating counselors. (R. at 21.) While the ALJ properly considered Ratliff's need to perform low-stress, simple tasks in a work environment that did not require extensive interaction with supervisors, co-workers or the public, there is uncontradicted evidence contained in the record as to the degree of Ratliff's other mental limitations that contradicts the ALJ's mental residual functional capacity finding.

For instance, Burke noted that Ratliff was seriously limited in his ability to use judgment, to function independently, to maintain attention/concentration, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 245-47.) Ramey and Roth also indicated that Ratliff was seriously limited in his ability to use judgment, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 223-24.) Also, both assessments indicate that Ratliff would miss two days or more of work per month due to his psychological impairments. (R. at 225, 247.) While an ALJ may, under the regulations, assign no or little weight to a medical opinion based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings, he may not reject medical evidence for no reason or for the wrong reason. *See King*, 615 F.2d at 1020. Furthermore, an ALJ may not simply disregard uncontradicted expert opinions in favor of his own opinion on a subject that he is not qualified to render. *See Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988);

-11-

*Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984). Based on my review of the record, I do not find that the ALJ properly weighed the medical evidence with regard to Ratliff's mental residual functional capacity.

For all of these reasons, I find that substantial evidence does not support the ALJ's finding regarding Ratliff's mental residual functional capacity assessment. I will remand the case to the ALJ for further consideration consistent with this Memorandum Opinion.

### *IV. Conclusion*

For the foregoing reasons, the Commissioner's motion for summary judgment will be denied, Ratliff's motion for summary judgment will be denied, the Commissioner's decision denying benefits will be vacated, and the case will be remanded to the Commissioner for further consideration consistent with this Memorandum Opinion.

An appropriate order will be entered.

DATED: This 8th day of April 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE